UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C S BIO CO., et al.,

    Plaintiffs,

    v.

COMERICA BANK,

    Defendant.

Case No. 22-cv-05033-RS

**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**

## I. INTRODUCTION

Plaintiffs C S Bio Co. and CCS Management, LLC are related commercial entities (collectively "CS") who had a long-term banking relationship with defendant Comerica Bank. In the course of that relationship, CS had obtained a number of loans from the bank. In 2019, CS applied to Comerica for a new loan in the amount of $6.6 million to fund the construction of improvements to a property CS owned. CS alleges Comerica thereafter made various representations that the loan had been or would be approved, and would be funded. CS claims it relied on those representations to its detriment by not terminating the project while it still could and by making payments towards the construction costs. CS brought this action after Comerica declined to give final approval and fund the loan.

Comerica moves to dismiss, arguing none of CS's claims are tenable. Because CS has not pleaded sufficient facts to support plausible allegations that Comerica made misrepresentations on which CS reasonably relied, the motion to dismiss will be granted, with leave to amend.

## II.  BACKGROUND

The complaint alleges all of the following. In 2019, CS engaged a general contractor in anticipation of making significant improvements to certain commercial real estate it owned in Milpitas. The project was expected to cost approximately $13.6 million, which CS intended to fund with $2 million of its existing resources, a $5 million loan from the Small Business Administration ("SBA"), and a $6.6 million loan from Comerica. CS had been doing business with Comerica since 2013, and had existing loans from the bank on other properties.

CS began the loan application process in June of 2019. Comerica advised CS that loan approval would be quicker and easier if CS reduced its existing loan portfolio at the bank. CS therefore replaced one Comerica loan, for approximately $3 million with interest at 3%, with a loan from another lender at 4.25%.

In July of 2020, after "extensive negotiations" between CS and Comerica's Business Banking group, the parties signed a Letter Agreement. The complaint does not attach the Letter Agreement or describe its terms in any detail.[1] Around the same time the Letter Agreement was entered, responsibility for the loan application within Comerica was transferred from the Business Banking group (with whom CS had the long-term relationship) to Peter Wentworth and Bill Burke of the bank's "middle market division." Wentworth and Burke had no prior experience with CS. The complaint asserts "on information and belief" that Wentworth and Burke are both Vice Presidents at Comerica.

Construction at the property had begun in or about June of 2020, with CS funding the initial payments to the contractor itself. Because it could "elect to halt construction by mid-September 2020," CS asked Wentworth and Burke about the loan status "several times during the summer and fall of 2020." CS's CEO, Jason Chang, specifically told the bank he would not continue construction unless the loan was funded, but Comerica told him to go forward, because CS would be reimbursed when the loan went through.

---

[1] Comerica asserts it has located no such agreement in its files. In opposing the motion, CS offers no arguments specifically relying on the alleged letter.

CASE NO. 22-cv-05033-RS

2

During a call on August 27, 2020, Wentworth assured Chang that the loan "was on 'the 20-yard line' in term[s] of obtaining approval." On August 31, 2020, Mr. Wentworth advised Chang that the parties were on "the 15-yard line now and driving." Two days later, Wentworth told Chang that "once the term sheet was issued, the loan would be approved by Comerica."

Comerica issued the "term sheet" shortly thereafter, and CS returned it signed to Comerica on September 8, 2022. The complaint does not attach the term sheet or describe it in detail, but Comerica has requested judicial notice of the document, to which CS does not object.[2] The term sheet began with a "preliminary statement," in bold:

> **THIS PROPOSAL IS FOR DISCUSSION PURPOSES ONLY. It does not represent a commitment to loan on the part of Comerica/SBA. If the proposal meets with your approval, it will be subject to other terms and conditions including credit approval by Comerica/SBA, which may include new, additional or other terms and conditions, and also subject to the execution and delivery of all documents and information required by Comerica/SBA in form and substance satisfactory to Comerica/SBA.**

The term sheet then set out a litany of contingencies and conditions on which loan approval would be dependent. Among these was a "fixed charge coverage ratio" limit with which CS had to comply. Comerica required that ratio, which typically represents a company's earnings (less capital expenditures and certain other outflows) divided by its fixed expenses, be at least 1.25.

The term sheet concluded with a statement, again in bold, that echoed the preliminary statement.

> **THIS PROPOSAL IS FOR DISCUSSION PURPOSES ONLY. It does not represent a commitment to loan on the part of**

---

[2] Whether or not through formal "judicial notice," consideration of the term sheet is appropriate. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012)("courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions . . . . A court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." (cleaned up).

**Comerica/SBA. If the proposal meets with your approval, it will be subject to other terms and conditions including credit approval by Comerica/SBA, which may include new, additional or other terms and conditions, and also subject to the execution and delivery of all documents and information required by Comerica/SBA in form and substance satisfactory to Comerica/SBA. If not accepted in writing prior, this letter and its contents will expire October 4, 2020.**

The same day it returned the signed term sheet, CS paid its contractor $308,000. The complaint alleges CS did so "believing that the loan was approved and would be funded based on Mr. Wentworth's representations." Complaint, para. 28. Neither the complaint nor CS's briefing in opposition to the motion to dismiss explains how CS could have believed the loan "was approved" given the clear and conspicuous language in the term sheet to the contrary.

In October of 2020, Burke wrote Chang to advise that CS's application for a SBA loan had been submitted, and shortly thereafter Comerica provided loan documents to CS and opened an escrow. In "multiple check-in calls" during October, Comerica advised Chang that "the loan would be funded" once the SBA loan was approved. That loan was ultimately approved on November 19, 2020.

On November 20th and 23rd, Chang "sought assurances" from Burke and Wentworth "of Comerica's loan approval and reimbursement of amounts invoiced" by the contractor totaling approximately $740,000. Burke and Wentworth advised "pay first and we will reimburse you later." CS contends this indicated "the loan had been approved and funding was a certainty."

In December of 2020, however, Comerica notified CS that it had "determined not to proceed with the financing." Comerica asserted the loan would not go forward because CS was in default as to the "fixed charge coverage ratio" as of September 30, 2020.

CS does not dispute that it failed to meet the minimum ratio. It contends, however, Comerica's rejection of the loan in December on that basis was not proper because Comerica allegedly knew CS was not meeting the ratio approximately five months earlier. On July 26, 2020, CS had furnished Comerica with a "Financial Covenants and Ratios Compliance Certificate" showing that CS's fixed charge coverage ratio was only 1.27, barely above the 1.25 minimum. At

the same time, CS had advised Comerica that it had "[r]emoved $598K" paid to the contractor from "non financed capital expenditures" based on Comerica's promises of reimbursement. Thus, CS contends, Comerica knew absent its promised reimbursement of construction costs, CS was already unable to meet the required fixed charge coverage ratio. CS asserts the only reason it failed to meet the fixed charge coverage ratio by December of 2020 was its continued contribution of capital to the construction project, which Burke and Wentworth had repeatedly encouraged by assuring Chang the loan would be approved and those contributions would be reimbursed via the loan proceeds.

On these facts, the complaint advances six claims for relief[3]:  (1) Fraud-Intentional Misrepresentation, (2) Fraud-Concealment, (3) Breach of Oral Agreement, (4) Promissory Estoppel, (5) Negligent Misrepresentation, and, (6) Negligence. CS's opposition to the motion to dismiss withdraws the claim for breach of an oral agreement.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679. Claims sounding in fraud must meet a somewhat higher specificity standard as provided by Rule 9 of the

---

[3] Each claim is labeled as a "cause of action," in conformance with state court practice, as the complaint was originally filed in San Mateo Superior Court, prior to Comerica's removal of the action to this court.

Federal Rules of Civil Procedure.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

## IV.  DISCUSSION

### A.  Duty

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). Relying on this general principle, Comerica argues that all of CS's misrepresentation claims fail, as well as its claim for "negligence."

As to the claims for relief asserting misrepresentation, Comerica's argument is not tenable. *Nymark* itself makes clear the issue of "duty" with which it is concerned applies in the context of general *negligence* claims. "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." 231 Cal. App. 3d at 1095. Comerica can point to no authority suggesting a bank lacks a duty to refrain from committing fraud against its customers.

With respect to the sixth claim for relief labeled as "negligence," the "no duty" argument potentially could have more force. CS insists a duty of care arose because Comerica exceeded the role of a mere lender when its employees "acted as close advisors," and therefore this case falls under the principles of cases such as *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872

(2013) and *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011), where negligence claims were allowed to go forward based on conduct by banks that went "beyond the domain of a usual money lender." *Ansanelli* at *1.

Even assuming those cases remain good law and the complaint here alleges sufficient facts to fall within their holdings with respect to the role Comerica played, CS cannot rely on them because its sixth claim for relief, while labeled as if it were alleging general negligence, in fact is wholly duplicative of its claim for negligent *misrepresentation.* The complaint alleges, "Comerica breached its duty of care *by making false and otherwise misleading representations* to C S Bio regarding the loan application . . . ." Complaint, para. 81 (emphasis added). It goes on to list specifically the alleged misrepresentations in *identical* language to that used in the claim for relief for negligent misrepresentation. While it might be theoretically possible to allege a claim for general negligence, CS has not done so here. The sixth claim for relief therefore stands or falls with the fifth claim for relief.

B.  Misrepresentation

The gravamen of the complaint's first claim for relief—intentional misrepresentation—is that Comerica allegedly falsely and repeatedly told CS the loan would be approved. The second claim for relief—concealment—merely asserts the converse proposition; i.e., by falsely asserting the loan would be approved, Comerica was concealing the fact that it would not be approved. The fifth claim—negligent misrepresentation—asserts the same misrepresentations, but alleges that they were made without a reasonable basis, rather than as deliberate falsehoods. The sixth claim for relief, as discussed above, merely duplicates the fifth claim.

CS concedes that statements of opinion and mere predictions of future events are not actionable as misrepresentations. It points out, however, that "under certain circumstances, expressions of professional opinion are treated as representations of fact. When a statement, although in the form of an opinion, is not a casual expression of belief but a deliberate affirmation of the matters stated, it may be regarded as a positive assertion of fact." *Bily v. Arthur Young &*

*Co.*, 3 Cal. 4th 370, 408 (1992) (citation and quotations omitted). "Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact." *Id*.

Even assuming CS has adequately alleged such representations here, however, its claims fail for at least two reasons. First, CS has not alleged sufficient facts to make a plausible claim that Comerica knew the representations were false at the time they were made.[4] CS alleges the financial information it provided Comerica in July showed it satisfied the minimum ratio requirement, albeit by characterizing a then-recent payment to the contractor in a manner that did not impact the ratio. While CS argues Comerica was aware that it was making additional payments to the contractor, it does not suggest Comerica had access to other financial information necessary to calculate the ratio at any time before December. Comerica had plainly advised CS that meeting the ratio requirement was a loan condition, it may have been perfectly reasonable for Comerica to assume CS would manage to do so, notwithstanding the payments to the contractor.

Furthermore, while it may not be a requirement in every case that a plaintiff allege a motive for a defendant to commit fraud, CS's failure to do so here makes less plausible its assertion that Comerica knew that it would not approve the loan when it made the various statements that approval was forthcoming. Absent some explanation of possible motive, it is difficult to imagine the bankers continuing to put effort into processing the loan if they in fact knew it would not be approved.

The second reason the misrepresentation claims fail is that CS has not plausibly alleged reliance. Paragraph 28, quoted in the background section above, is emblematic of the problem. CS alleges it made a payment to the contractor "believing that the loan was approved and would be

---

[4] It is a closer call as to whether the allegations would support the *negligent* misrepresentation claims on this point. Because those claims otherwise fail as discussed below, it is not necessary to decide that question.

funded" on the same day that it returned the signed term sheet, which so clearly and forcefully stated the loan had *not* yet been approved, and made apparent that it would *never* be approved absent fulfillment of a host of conditions, including some still unstated at the time.

It appears that CS's basic theory may be that it was wrongful for Burke and Wentworth to encourage it to make payments to the contractor, but then enforce the provision of the term sheet requiring compliance with the ratio requirement. Whether such a claim would sound in fraud or not, at this juncture CS simply has not pleaded sufficient facts to avoid the clear import of having signed the term sheet, thereby establishing its knowledge that the loan had not been approved and would not be approved until numerous conditions were fulfilled, including compliance with the ratio requirement.

Accordingly, the misrepresentation claims must be dismissed. CS will be granted leave to amend the complaint, by supplementing the factual allegations to support the existing claims for relief and/or by articulating a different claim for relief arising from the facts alleged.

### C. Promissory Estoppel

The elements of promissory estoppel are (1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promisee or a third person, (3) the promise induces action or forbearance by the promisee or a third person (which we refer to as detrimental reliance), and (4) injustice can be avoided only by enforcement of the promise." *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 803 (2013). For much the same reasons that the misrepresentation claims fail, the promissory estoppel claim is not viable. The alleged reassurances by Comerica that loan approval was forthcoming cannot be seen as enforceable promises in light of the term sheet, and CS cannot have reasonably relied on them.

V. CONCLUSION

The motion to dismiss is granted, with leave to amend as specified above. Any amended complaint shall be filed within 20 days of the date of this order.

**IT IS SO ORDERED**

Dated: November 10, 2022

_____
RICHARD SEEBORG
Chief United States District Judge