UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C S BIO CO., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COMERICA BANK,<br><br>    Defendant. | Case No. 22-cv-05033-RS<br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT** |

I. INTRODUCTION

Plaintiffs CS Bio Co. and CCS Management, LLC (collectively "CS") are related commercial entities who had a long-term banking relationship with defendant Comerica Bank. CS brought this action alleging, in essence, that in 2019 Comerica backtracked on its promises to provide a new loan in the amount of $6.6 million to fund the construction of improvements to a property CS owned. The initial complaint was dismissed, with leave to amend, because it did not plausibly allege Comerica made misrepresentations on which CS reasonably relied. The order observed that CS did not object to judicial notice being taken of the provisions of a "term sheet" it had executed. That term sheet fatally undermined any claim that CS had reasonably relied on any contrary oral assurances.

CS's First Amended Complaint (FAC) presents a slightly different factual basis and legal theory to support its fraud and related claims. Comerica's motion to dismiss has been submitted without oral argument, pursuant to Civil Local Rule 7-1(b). The allegations remain insufficient to

state a claim, and the motion must be granted. CS will nevertheless be allowed one final opportunity to amend, if it can in good faith offer factual allegations to address the issues identified in this order.

## II.  BACKGROUND

The broad factual circumstances alleged in the FAC do not materially differ from those set out in the original complaint. In 2019, CS engaged a general contractor in anticipation of making significant improvements to certain commercial real estate it owned in Milpitas. The project was expected to cost approximately $13.6 million, which CS intended to fund with $2 million of its existing resources, a $5 million loan from the Small Business Administration ("SBA"), and a $6.6 million loan from Comerica. CS had been doing business with Comerica since 2013, and had existing loans from the bank on other properties.

CS began the loan application process in June of 2019. Comerica advised CS that loan approval would be quicker and easier if CS reduced its existing loan portfolio at the bank. CS therefore replaced one Comerica loan, for approximately $3 million with interest at 3%, with a loan from another lender at 4.25%.

In July of 2020, after "extensive negotiations" between CS and Comerica's Business Banking group, CS contends the parties signed a "letter agreement." Like the original complaint, the FAC does not attach the letter agreement or describe its terms in any detail.[1] Around the same time the supposed letter agreement was executed, responsibility for the loan application within Comerica was transferred from the Business Banking group (with whom CS had the long-term relationship) to Peter Wentworth and Bill Burke of the bank's "middle market division."

---

[1] In the first motion to dismiss, Comerica asserted it was unable to locate such an agreement in its files. Comerica states it still has not found any "letter agreement" from July of 2020. CS offered no arguments specifically relying on the alleged letter in its prior opposition, and does not do so now. Given that CS was on notice the existence of the alleged letter agreement was in question, the FAC's failure to allege its terms in more detail or to attach it, and the opposition's failure to present substantive argument regarding it, CS cannot now contend the letter agreement supports a different result.

Wentworth and Burke had no prior experience with CS. Like the original complaint, the FAC asserts "on information and belief" that Wentworth and Burke are both Vice Presidents at Comerica.

Construction at the property had begun in or about June of 2020, with CS funding the initial payments to the contractor itself. Because it could "elect to halt construction by mid-September 2020," CS asked Wentworth and Burke about the loan status "several times during the summer and fall of 2020." CS's CEO, Jason Chang, specifically told the bank he would not continue construction unless the loan was funded, but Comerica told him to go forward, because CS would be reimbursed when the loan went through.

During a call on August 27, 2020, Wentworth assured Chang that the loan "was on 'the 20-yard line' in term[s] of obtaining approval." On August 31, 2020, Wentworth advised Chang the parties were on "the 15-yard line now and driving." Two days later, Wentworth told Chang, "once the term sheet was issued, the loan would be approved by Comerica."

Comerica issued the "term sheet" shortly thereafter. CS signed it and returned it to Comerica on September 8, 2022. The FAC does not attach the term sheet or describe it in detail, but Comerica has requested judicial notice of the document, to which CS does not object.[2] The term sheet began with a "preliminary statement," in bold:

> **THIS PROPOSAL IS FOR DISCUSSION PURPOSES ONLY. It does not represent a commitment to loan on the part of Comerica/SBA. If the proposal meets with your approval, it will be subject to other terms and conditions including credit approval by Comerica/SBA, which may include new, additional or other terms and conditions, and also subject to the execution and delivery of all documents and information required by**

---

[2] As explained in the prior dismissal order, consideration of the term sheet is appropriate, whether or not through formal "judicial notice." *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012)("courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions . . . . A court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." (cleaned up). The FAC expressly alleges the term sheet was issued (Para. 31) and discussed by the parties (Para. 37).

**Comerica/SBA in form and substance satisfactory to Comerica/SBA.**

The term sheet then set out a litany of contingencies and conditions on which loan approval would be dependent. Among these was a "fixed charge coverage ratio" limit with which CS had to comply. Comerica required that ratio, which typically represents a company's earnings (less capital expenditures and certain other outflows) divided by its fixed expenses, be at least 1.25.

The term sheet concluded with a statement, again in bold, that echoed the preliminary statement.

> **THIS PROPOSAL IS FOR DISCUSSION PURPOSES ONLY. It does not represent a commitment to loan on the part of Comerica/SBA. If the proposal meets with your approval, it will be subject to other terms and conditions including credit approval by Comerica/SBA, which may include new, additional or other terms and conditions, and also subject to the execution and delivery of all documents and information required by Comerica/SBA in form and substance satisfactory to Comerica/SBA. If not accepted in writing prior, this letter and its contents will expire October 4, 2020.**

The same day it returned the signed term sheet, CS paid its contractor $308,000. The complaint alleges CS did so because it understood the loan "would be funded based on Mr. Wentworth's representation." FAC para. 38.

In October of 2020, Burke wrote Chang to advise that CS's application for an SBA loan had been submitted. Shortly thereafter Comerica provided loan documents to CS and opened an escrow. In "multiple check-in calls" during October, Comerica advised Chang that "the loan would be funded" once the SBA loan was approved. The SBA loan was ultimately approved on November 19, 2020.

On November 20th and 23rd, Chang "sought assurances" from Burke and Wentworth "of Comerica's loan approval and reimbursement of amounts invoiced" by the contractor totaling approximately $740,000. Burke and Wentworth advised "pay first and we will reimburse you later." CS contends this indicated "the loan had been approved and funding was a certainty."

In December of 2020, however, Comerica notified CS that it had "determined not to proceed with the financing." Comerica asserted the loan would not go forward because CS was in default as to the "fixed charge coverage ratio" as of September 30, 2020. FAC para. 55.

CS does not dispute that it failed to meet the minimum ratio. It contends, however, Comerica's rejection of the loan in December on that basis was not proper because Comerica allegedly knew CS was not meeting the ratio approximately five months earlier. On July 26, 2020, CS had furnished Comerica with a "Financial Covenants and Ratios Compliance Certificate" showing that CS's fixed charge coverage ratio was only 1.27, barely above the 1.25 minimum. At the same time, CS had advised Comerica that it had "[r]emoved $598K" paid to the contractor from "non financed capital expenditures" based on Comerica's promises of reimbursement. FAC para. 23. Thus, CS contends, Comerica knew absent its promised reimbursement of construction costs, CS was already unable to meet the required fixed charge coverage ratio. CS asserts the only reason it failed to meet the fixed charge coverage ratio by December of 2020, was its continued contribution of capital to the construction project, which Burke and Wentworth had repeatedly encouraged by assuring Chang the loan would be approved and those contributions would be reimbursed via the loan proceeds. The FAC contains a new allegation that, "[o]n November 24, 2020, Comerica emailed C S Bio stating it was waiving the fixed charge coverage ratio covenant." *Id.*, para. 35.

The FAC also expands on the original allegations by asserting that in September of 2020, CS and Comerica discussed the financial health of Intarcia, which was "by-far CS Bio's largest client," accounting for more than half its revenue since 2015. FAC paras. 32, 34. CS alleges it warned Comerica Intarcia might declare bankruptcy, but that Comerica stated it would still fund the loan even if "Intarcia intended to declare bankruptcy." *Id.*, para. 36. The FAC asserts CS "knew this representation was false at the time it was made, as evidenced by the fact that shortly after being advised by C S Bio of Intarcia's intention to declare bankruptcy, Comerica rejected C S Bio's loan on the pretextual basis that C S Bio did not comply with Comerica's fixed charge coverage ratio covenant." FAC para. 71.

On these facts, the FAC advances five claims for relief, labeled as: (1) Fraud-Intentional Misrepresentation; (2) Negligent Misrepresentation; (3) General Negligence; (4) Fraud-Concealment, and; (5) Promissory Estoppel. Although presented in a somewhat different order, these are the same basic claims advanced in the original complaint, with the omission of a claim for breach of oral contract, which CS withdrew in its opposition to the prior motion to dismiss.

III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679. Claims sounding in fraud must meet a somewhat higher specificity standard as provided by Rule 9 of the Federal Rules of Civil Procedure.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

## IV.  DISCUSSION

### A.  Claims sounding in fraud

The order dismissing the original complaint held: (1) CS had not alleged sufficient facts to support a plausible claim that Comerica knew the purported misrepresentations were false at the time they were made; and, (2) CS had not plausibly alleged facts showing it reasonably relied on the purported misrepresentations, especially given the provisions of the term sheet it signed. The parties framed the issue as being when and whether statements of opinion and mere predictions of future events are actionable. CS acknowledged such statements generally cannot support liability, but argued "under certain circumstances, expressions of professional opinion are treated as representations of fact. When a statement, although in the form of an opinion, is not a casual expression of belief but a deliberate affirmation of the matters stated, it may be regarded as a positive assertion of fact." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 408 (1992) (citation and quotations omitted).

The issue, though, is not so much that the alleged misrepresentations might constitute "professional opinions," but that they were promises as to what Comerica would do in the future. Although *false* promises may be actionable, they must be distinguished from *broken* promises, which generally are not. While some case law previously suggested "proof that a promise was made and that it was not fulfilled is sufficient to prove fraud . . . [t]his is not, and has never been, a correct statement of the law." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985). "Rather, something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Id.* The inquiry, therefore, is whether the complaint alleges sufficient facts, which if proven, would support an inference that the alleged promises were false when made.

Even putting aside any impact of the term sheet, the FAC, like the original complaint, alleges false promises, as opposed to misrepresentations of existing fact.[3] With one exception, the

---

[3] A very few allegations are worded as misrepresentations of then-existing fact. See, *e.g.,* FAC para. 49. (". . . indicating that the loan had been approved). In context, however, it is clear CS understood the loan and its funding had not been finalized, and was instead taking the alleged

FAC offers no facts whatsoever to support an inference that Comerica lacked the intent to perform when it offered assurances the loan would be approved.[4] As noted above, the FAC includes a new allegation that Comerica promised it would approve the loan even if Intarcia "intended to declare bankruptcy." Paras. 36, 70. As also observed above, the FAC then asserts "Comerica knew this representation was false at the time it was made, as evidenced by the fact that shortly after being advised by C S Bio of Intarcia's intention to declare bankruptcy, Comerica rejected C S Bio's loan on the pretextual basis that C S Bio did not comply with Comerica's fixed charge coverage ratio covenant." Para. 71.

The bald assertion that Comerica used non-compliance with the fixed charge ratio as a pretext, however, does not plausibly support an inference that Comerica never intended to approve the loan if Intarcia intended to declare bankruptcy, notwithstanding its alleged promise to the contrary. Even assuming the Intarcia bankruptcy contributed to Comerica's decision not to go forward (despite previously telling CS it would not be a deal breaker), that is insufficient to show Comerica's assurances about Intarcia were actionable false promise fraud.

As with the original complaint, the existence of the term sheet further undermines the viability of any claims sounding in fraud. Again, CS simply has not pleaded sufficient facts to avoid the clear import of having signed the term sheet, thereby establishing its knowledge that the loan had not been approved and would not be approved until numerous conditions were fulfilled.

At heart, CS seems to be arguing that it was not *reasonable* for Burke and Wentworth to make optimistic statements regarding the likelihood of loan approval or to encourage CS to pay

---

communications as further assurances of *future* performance by Comerica.

[4] Comerica, of course, contends that it did not even break any promises, because any statements it made regarding possible approval of the loan were contingent on conditions CS failed to fulfill. The point is, though, that even assuming Comerica broke promises, that is not actionable as fraud. While broken promises can support claims in contract, CS has not attempted to allege a breach of contract claim here and there is no indication it could successfully do so, especially given the term sheet.

construction costs in the hope of reimbursement upon funding of the loan, when Comerica knew or should have known that making those payments would preclude CS Bio from meeting the fixed charge ratio. Such arguments and the allegations of the FAC, however, are insufficient to support an inference that Comerica made promises without an intent to perform.

The first claim for relief for intentional misrepresentation must therefore be dismissed. The fourth claim for relief, premised on the notion that it was fraudulent for Comerica to conceal its "true" intentions fails for the same reasons.

Even putting aside the failure of the complaint to allege sufficient facts to support reasonable reliance by CS on any oral representations of Comerica, the second claim for relief, for "negligent misrepresentation" fails because, "[s]imply put, making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise. Moreover, we decline to establish a new type of actionable deceit: the negligent false promise." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991). Again, the SAC alleges only false promises, as opposed to false representations of existing fact. Even if Comerica was negligent in making those promises, CS has no viable claim.[5] As such, none of the SAC's claims for relief sounding in fraud are adequately pleaded and the motion to dismiss those claims must be granted.

B. General Negligence

The order dismissing the prior complaint observed the claim labeled as "general negligence" was wholly duplicative of the claim for negligent misrepresentation because it only alleged Comerica breached its duty of care by making false and otherwise misleading representations to CS regarding the loan application. The third claim for relief advanced in the

---

[5] A footnote in the prior order suggested the allegations of the original complaint arguably came closer to showing that Comerica made negligent statements, as opposed to intentional misrepresentations. Nothing in that footnote, however, overrides the principle that promises (unlike misrepresentations of existing fact), are not actionable even when negligently made.

SAC again asserts "general negligence" and contends "Comerica was negligent in failing to review C S Bio's financial information to assess what effect C S Bio's contractor payments would have on the loan application before representing to C S Bio that the loan would be approved." FAC, para. 87. Such allegations remain, fundamentally, a claim that Comerica negligently made promises as to the loan approval. As stated above, claims of negligent false promise are not actionable.[6]

To the extent the allegations of the SAC could be construed as claiming Comerica acted with *general* negligence in connection with the loan application, apart from any negligent misrepresentation, CS has still failed to allege facts sufficient to take its claims outside the ordinary rule that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). The allegations of the SAC that Comerica's employees acted as "close advisors" to CS and engaged in extensive negotiations and discussions regarding the loan fall short of adequate pleading that Comerica acted as more than a "mere [potential] lender of money." Accordingly, the third claim for relief must be dismissed.

C. Promissory estoppel

The remaining claim for relief in the SAC is labeled as "promissory estoppel." "The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages." *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692 (2004). Promissory estoppel permits recovery in some circumstances where a lack of consideration would defeat an ordinary breach of contract claim. *See, e.g., Raedeke v. Gibraltar Savings & Loan Ass'n*,

---

[6] A footnote in the prior order suggested the allegations of the original complaint arguably came closer to showing that Comerica made negligent statements, as opposed to intentional misrepresentations. Nothing in that footnote, however, overrides the principle that promises (unlike misrepresentations of existing fact), are not actionable even when negligently made.

10 Cal. 3d 665, 672 (1974) ("[T]he doctrine of promissory estoppel is used to provide a substitute for the consideration which ordinarily is required to create an enforceable promise.").

The theory of promissory estoppel is ill-suited to CS's claims where the issue is not that Comerica's alleged promises are unenforceable under contract law for lack of consideration. To the extent that CS's claims could otherwise be shoe-horned in to the promissory estoppel doctrine, however, they fail for the same reasons as before. The alleged reassurances by Comerica that loan approval was forthcoming cannot be seen as enforceable promises in light of the term sheet, and CS cannot have reasonably relied on them.

D.  <u>Leave to amend</u>

Although it likely would not be an abuse of discretion to deny further leave to amend, neither is it beyond the limits of discretion to permit CS one final opportunity to state a claim. The FAC includes an allegation, not emphasized in the briefing, that "[o]n November 24, 2020, Comerica emailed C S Bio stating it was waiving the fixed charge coverage ratio covenant." FAC, para 53. If that allegation can be substantiated, it would not necessarily give rise to a viable promissory fraud claim, as it still would not show any representations were false when made, or that CS detrimentally relied on that alleged waiver after November 24, 2023. The allegation is, however, at least directed at showing the term sheet might not be an insurmountable barrier to a viable claim.   At this point it is somewhat troubling that CS is arguing Comerica's invocation of the breach of the fixed covenant ratio was mere "pretext," and/or that it should have known CS was out of compliance with the ratio, if it in fact has evidence that Comerica *waived* the requirement.[7]
In any amended complaint, however, CS will be free to present such factual allegations and legal theories as it may in good faith believe are warranted, under the standards of Rule 11 of the

---

[7] Of course, any waiver by Comerica of the fixed covenant ratio would not necessarily mean it was then automatically obliged to approve and fund the loan.

Federal Rules of Civil Procedure.

## V. CONCLUSION

The motion to dismiss the FAC is granted. Any Second Amended Complaint shall be filed no later than October 5, 2023.

**IT IS SO ORDERED**.

Dated: September 19, 2023

_____
RICHARD SEEBORG
Chief United States District Judge